## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| RING CONTAINER TECHNOLOGIES, LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | C.A. No. |
| v. | ) ) | JURY TRIAL DEMANDED |
| GRAHAM PACKAGING COMPANY, L.P., | ) ) ) ) ) | |
| Defendant. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Ring Container Technologies, LLC ("Ring") brings this complaint for patent infringement against Defendant Graham Packaging Company, L.P. ("Defendant" or "Graham") and alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action for infringement of U.S. Patent Nos. 12,030,233, 12,337,520, 12,434,422, and 12,472,674 ("Patents-in-Suit") arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271.  Ring seeks damages, injunctive relief, attorneys' fees and such other relief as is just and proper.

2.      This action arises out of Graham's making, using, selling, offering to sell and/or importing products that infringe the Patents-in-Suit, and Graham's inducing and contributing to infringement of the Patents-in-Suit.

**PARTIES**

3.      Plaintiff Ring is a limited liability company organized under the laws of Tennessee, with its principal place of business at One Industrial Park Rd., Oakland, Tennessee 38060.

4.      Graham is a Delaware limited partnership with a principal place of business at 700 Indian Springs Drive, Suite 100, Lancaster, Pennsylvania 17601.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this case arises under the patent laws of the United States, Title 35 of the United States Code.

6.      This Court has general and specific personal jurisdiction over Defendant because, on information and belief, the Defendant has registered under the laws of the State of Delaware, has substantial, continuous, and systematic contacts with the State of Delaware, has purposefully availed itself of the privilege of conducting business within this State and is registered as a limited partnership in this District.

7.      On information and belief, Defendant has purposefully directed activities at residents of the forum, the present patent infringement claims arise out of those activities, and assertion of personal jurisdiction over Defendant by this Court is reasonable and fair. Moreover, on information and belief, Defendant has purposefully availed itself of this forum by making, using, importing, selling and/or offering to sell infringing products in the State of Delaware, causing others to do the same, or by delivering its products into the stream of commerce with the expectation that they will be purchased by customers in the State of Delaware.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 1400(b) because, Defendant is a resident of this District as a limited partnership organized and existing under the

laws of the State of Delaware and is subject to jurisdiction in this District. Defendant has directly or indirectly infringed, contributed to, or induced the infringement of others, including customers or consumers, in this District.

**FACTUAL BACKGROUND**

**Ring and the Patents-in-Suit**

9.      Ring is a leader in the packaging and plastic container market. Its innovative team designs and manufactures light yet durable packages and containers from materials such as polyethylene terephthalate ("PET") and plastic. Once delivered to customers, the products are typically combined with the customer's own product, and then resold, including through various retail channels, to consumers around the United States.

10.     Ring protects and maintains its research and development investment with a patent portfolio reflecting the efforts and innovation of its team. Ring has been awarded many patents, and enforces its patent rights when necessary to protect its research investment and prevent unauthorized use. Ring's portfolio includes the Patents-in-Suit identified herein.

11.     U.S. Patent No. 12,030,233 (the "'233 Patent") is titled "Container and Method of Manufacture" and was duly and legally issued by the United States Patent and Trademark Office on July 9, 2024. The term of the '233 Patent has not expired. The '233 Patent is valid and enforceable, and Ring is the owner and assignee of all substantial rights in the '233 Patent, a copy of which is attached as **Exhibit A**. As such, Ring has standing to sue and the right to recover damages for the infringement of the '233 Patent and pursue any and all causes of action and remedies, whether legal or equitable, related thereto.

12.     U.S. Patent No. 12,337,520 (the "'520 Patent") is titled "Container and Method of Manufacture" and was duly and legally issued by the United States Patent and Trademark Office

on June 24, 2025. The term of the '520 Patent has not expired. The '520 Patent is valid and enforceable, and Ring is the owner and assignee of all substantial rights in the '520 Patent, a copy of which is attached as **Exhibit B**. As such, Ring has standing to sue and the right to recover damages for the infringement of the '520 Patent and pursue any and all causes of action and remedies, whether legal or equitable, related thereto.

13.     U.S. Patent No. 12,434,422 (the "'422 Patent") is titled "Container and Method of Manufacture" and was duly and legally issued by the United States Patent and Trademark Office on October 7, 2025. The term of the '422 Patent has not expired. The '422 Patent is valid and enforceable, and Ring is the owner and assignee of all substantial rights in the '422 Patent, a copy of which is attached as **Exhibit C**. As such, Ring has standing to sue and the right to recover damages for the infringement of the '422 Patent and pursue any and all causes of action and remedies, whether legal or equitable, related thereto.

14.     U.S. Patent No. 12,472,674 (the "'674 Patent") is titled "Container and Method of Manufacture" and was duly and legally issued by the United States Patent and Trademark Office on November 18, 2025. The term of the '674 Patent has not expired. The '674 Patent is valid and enforceable, and Ring is the owner and assignee of all substantial rights in the '674 Patent, a copy of which is attached as **Exhibit D**. As such, Ring has standing to sue and the right to recover damages for the infringement of the '674 Patent and pursue any and all causes of action and remedies, whether legal or equitable, related thereto.

15.     The Patents-in-Suit describe and claim inventions relating to making containers with multiple layers containing an additive to protect the contents from degrading while also maintaining the recyclability of the container. The claimed inventions allow the storage of food grade contents in containers that protect those contents from oxygen reaching them, thus protecting

them from oxygen degradation and spoilage. Ring's customers desire oxygen barriers in PET containers because oxygen ingress will ultimately degrade the product through changes in color, taste and/or texture, as well as cause the loss of nutrients or vitamins.

16.    Ring practices one or more of the Patents-in-Suit, including through its patented BarrierGuard® OxygenSmart™ technology.  Ring's website specifically depicts Ring's relevant products and indicates that they are covered by one or more patents.  *See* https://ringcontainer.com/barrierguard-oxygensmart/.    An    example    of    Ring's    patented BarrierGuard® OxygenSmart™ technology as implemented in a PET bottle is pictured below and also on the excerpt from Ring's website at https://ringcontainer.com/barrierguard-oxygensmart/.




17.    Ring appropriately marks its products or the packaging thereof with relevant notice of applicable patent numbers, including one or more of the Patents-in-Suit.  *See, e.g.,* https://ringcontainer.com/bgospatentmarking/.

18.    Ring's patented BarrierGuard® OxygenSmart™ technology was engineered to reduce the amount of barrier material, while simultaneously encapsulating and concentrating barrier material within the bottle's wall.  Ring's technology allows for simplified inventory

management, offers superior barrier for up to two years, results in products having glass-like clarity and allows incorporation of recycled PET without degrading barrier performance.

19.    Ring's patented BarrierGuard® OxygenSmart™ technology has received industry recognition and awards.  How2Recycle ("H2R") is an organization that provides recycling labels based on custom recyclability assessments that help consumers implement consistent and transparent disposal instructions. Ring's patented technology implemented the first barrier PET bottle to receive a "Widely Recyclable" designation from H2R.

20.    Another important organization for recycling is the Association of Plastic Recyclers ("APR"), which is a non-profit organization with multiple industry participants that focuses on improving recycling for plastics. APR provides critical guidance requirements for recycling of barrier bottles.  APR promulgates various standards that require extensive testing and technical capability to meet.

21.    In October 2022, Ring presented its patented and proprietary technology and various testing results concerning same to APR's PET technical review committee. Ring's presentation to APR was open to various industry participants, including Defendant and various key customers. Thereafter, APR confirmed Ring's patented BarrierGuard® OxygenSmart™ technology met APR's critical guidance requirements, making Ring the first company to offer a PET bottle with barrier technology that met APR's critical guidance standards.

22.    Ring was recognized in 2023 with U.S. Plastics Pact's sustainable packaging innovation award for patented BarrierGuard® OxygenSmart™ technology.

**Defendant Graham's Knowing and Willful Infringement**

23.    Defendant was aware of developments relating to Ring's BarrierGuard® OxygenSmart™ technology. Defendant became aware of Ring's BarrierGuard® OxygenSmart™

product around February 2019.  Defendant was involved in APR and its work related to the PET technical committee that addressed the critical guidance standards.  Ring's presentation to APR was available to and, on information and belief, reviewed by Defendant.

24.     On information and belief, Defendant is and has been aware of each of the Patents-in-Suit and its infringement thereof. Ring's October 2022 presentation to APR specifically identified that its BarrierGuard® OxygenSmart™ technology was patented and proprietary. Further, on March 28, 2025, Ring provided notice that Defendant's LayerLock products would infringe upon the '233 patents, as well as U.S. patent application no. 2012/0129409, which application ultimately issued as the '422 patent in October 2025.  On information and belief, Defendant was aware of the '520 and '674 patents that are related to the foregoing patents.

25.     Various potential customers including Red Gold and Kraft Heinz expressed interest to Ring in obtaining Ring's patented BarrierGuard® OxygenSmart™ technology.  Before Defendant's infringement, Ring was the only company with an APR approved PET barrier bottle. Indeed, at the time Ring received APR approval, Defendant's then-existing "monolayer" technology was inferior and unable to provide the same benefits as Ring's patented BarrierGuard® OxygenSmart™ technology, including APR critical guidance approval, ability to use PCR content, and the Widely Recyclable H2R label.

26.     On information and belief, Defendant copied Ring's patented BarrierGuard® OxygenSmart™ technology in order to introduce its infringing LayerLock™ Multilayer product. Defendant learned of customer interest in Ring's patented BarrierGuard® OxygenSmart™ technology given Ring had passed APR testing and later received APR approval. Defendant informed customers, such as Kraft Heinz, that Defendant would develop new barrier technology that would offer the same benefits as Ring's patented technology.

27.     In November 2024, Defendant presented its infringing product to APR.  *See* **Exhibit E**.  Before that presentation, in addition to having access to and review of Ring's APR presentation concerning its patented and proprietary BarrierGuard® OxygenSmart™ technology, Defendant had obtained, tested and studied samples of Ring's products implementing its BarrierGuard® OxygenSmart™ technology. Only after Defendant's study and copying of Ring's patented technology did Defendant manage to develop an infringing product and present to APR its test results on such infringing technology, which ultimately resulted in APR finding that Defendant's LayerLock Multilayer barrier PET bottles passed APR's critical guidance.  *See* **Exhibit F**.

28.     Despite its knowledge of Ring's patent rights, Defendant knowingly began designing, manufacturing, offering for sale and selling certain containers and/or preforms that infringe one or more claims of each of the Patents-in-Suit.

29.     As an example of an Accused Product, Defendant manufactures, produces, and/or sells certain LayerLock™ Multilayer preforms and container products with a barrier that protects the contents of the container from oxygen while still being recyclable (the "Accused Products"). Defendant's LayerLock™ Multilayer product is discussed in **Exhibit E**, and is depicted below:



30.     Defendant designs, makes, offers to sell and sells the Accused Products for customers who fill the relevant packages with various food products and resell the same. Defendant has knowingly induced and contributed to infringement by customers such as Red Gold and Kraft Heinz by copying Ring's patented technology and infringing upon same.

## COUNT I - INFRINGEMENT OF U.S. PATENT NO. 12,030,233

31.     Ring realleges, adopts, and incorporates by reference herein each of the foregoing allegations as if fully set forth herein.

32.     Defendant has infringed, and continues to infringe, one or more claims of the '233 Patent, including, but not limited to, exemplary Claim 1, pursuant to 35 U.S.C. § 271(a), at least by, without authority, making, using, selling, offering for sale, and/or importing the Accused Products in the United States, including in this District.

33.     Defendant's Accused Products meet each and every element of at least one claim of the '233 Patent, either literally or through the doctrine of equivalents.

34.     Attached hereto as **Exhibit G**, and incorporated herein by reference, is a representative claim chart detailing how the Accused Products infringe the '233 Patent.

35.     Defendant has also indirectly infringed, and continues to indirectly infringe, one or more claims of the '233 Patent within the United States by inducement under 35 U.S.C. § 271(b). Since learning of the '233 Patent and by failing to cease offering the Accused Products, Defendant has knowingly and intentionally induced, and continues knowingly and intentionally to induce, others in this District and throughout the United States to directly infringe one or more claims of the '233 Patent. Defendant has known or should have known that offering to sell, selling or providing the Accused Products to its customers, intending for its customers to use or resell the Accused Products, would result and has resulted in infringement of one or more claims of the '233 Patent.

36.     Defendant has also indirectly infringed, and continues to indirectly infringe, one or more claims of the '233 Patent by contributing to the direct infringement of others under 35 U.S.C. § 271(c). Defendant's Accused Products have no substantial non-infringing uses and are known by Defendant to be especially made or especially adapted for use in an infringement of the '233 Patent. Since learning of the '233 Patent, Defendant has contributed to the direct infringement of others by offering to sell, selling or providing the Accused Products to its customers, intending for its customers to resell the Accused Products after each is combined with the customers' own products.

37.     Defendant has been aware of the '233 Patent since at least March 28, 2025. Defendant's infringement of the '233 Patent has been willful and deliberate. Ring is therefore entitled to increased damages under 35 U.S.C. § 284 and attorneys' fees and costs under 35 U.S.C. § 285.

38.     Ring has been and will continue to be damaged by Defendant's infringement of the

'233 Patent, and Ring is entitled to recover damages adequate to compensate it for Defendant's

infringing activities in an amount to be determined at trial, but in no event less than a reasonable

royalty.

39.     Unless enjoined by this Court, Defendant's acts of infringement will continue to

damage and cause irreparable harm to Ring.

## COUNT II - INFRINGEMENT OF U.S. PATENT NO. 12,337,520

40.     Ring realleges, adopts, and incorporates by reference herein each of the foregoing

allegations as if fully set forth herein.

41.     Defendant has infringed, and continues to infringe, one or more claims of the '520

Patent, including, but not limited to, exemplary Claim 19, pursuant to 35 U.S.C. § 271(a), at least

by, without authority, making, using, selling, offering for sale, and/or importing the Accused

Products in the United States, including in this District.

42.     Defendant's Accused Products meet each and every element of at least one claim

of the '520 Patent, either literally or through the doctrine of equivalents.

43.     Attached hereto as **Exhibit H**, and incorporated herein by reference, is a

representative claim chart detailing how the Accused Products infringe the '520 Patent.

44.     Defendant has also indirectly infringed, and continues to indirectly infringe, one or

more claims of the '520 Patent within the United States by inducement under 35 U.S.C. § 271(b).

Since learning of the '520 Patent and by failing to cease offering the Accused Products, Defendant

has knowingly and intentionally induced, and continues knowingly and intentionally to induce,

others in this District and throughout the United States to directly infringe one or more claims of

the '520 Patent. Defendant has known or should have known that offering to sell, selling or

providing the Accused Products to its customers, intending for its customers to use or resell the Accused Products, would result and has resulted in infringement of one or more claims of the '520 Patent.

45.     Defendant has also indirectly infringed, and continues to indirectly infringe, one or more claims of the '520 Patent by contributing to the direct infringement of others under 35 U.S.C. § 271(c). Defendant's Accused Products have no substantial non-infringing uses and are known by Defendant to be especially made or especially adapted for use in an infringement of the '520 Patent. Since learning of the '520 Patent, Defendant has contributed to the direct infringement of others by offering to sell, selling or providing the Accused Products to its customers, intending for its customers to resell the Accused Products after each is combined with the customers' own products.

46.     Defendant has been aware of the '520 Patent since at least November 3, 2025. Defendant's infringement of the '520 Patent has been willful and deliberate. Ring is therefore entitled to increased damages under 35 U.S.C. § 284 and attorneys' fees and costs under 35 U.S.C. § 285.

47.     Ring has been and will continue to be damaged by Defendant's infringement of the '520 Patent, and Ring is entitled to recover damages adequate to compensate it for Defendant's infringing activities in an amount to be determined at trial, but in no event less than a reasonable royalty.

48.     Unless enjoined by this Court, Defendant's acts of infringement will continue to damage and cause irreparable harm to Ring.

## COUNT III - INFRINGEMENT OF U.S. PATENT NO. 12,434,422

49.     Ring realleges, adopts, and incorporates by reference herein each of the foregoing allegations as if fully set forth herein.

50.     Defendant has infringed, and continues to infringe, one or more claims of the '422 Patent, including, but not limited to, exemplary Claim 18, pursuant to 35 U.S.C. § 271(a), at least by, without authority, making, using, selling, offering for sale, and/or importing the Accused Products in the United States, including in this District.

51.     Defendant's Accused Products meet each and every element of at least one claim of the '422 Patent, either literally or through the doctrine of equivalents.

52.     Attached hereto as **Exhibit I**, and incorporated herein by reference, is a representative claim chart detailing how the Accused Products infringe the '422 Patent.

53.     Defendant has also indirectly infringed, and continues to indirectly infringe, one or more claims of the '422 Patent within the United States by inducement under 35 U.S.C. § 271(b). Since learning of the '422 Patent and by failing to cease offering the Accused Products, Defendant has knowingly and intentionally induced, and continues knowingly and intentionally to induce, others in this District and throughout the United States to directly infringe one or more claims of the '422 Patent. Defendant has known or should have known that offering to sell, selling or providing the Accused Products to its customers, intending for its customers to use or resell the Accused Products after, would result and has resulted in infringement of one or more claims of the '422 Patent.

54.     Defendant has also indirectly infringed, and continues to indirectly infringe, one or more claims of the '422 Patent by contributing to the direct infringement of others under 35 U.S.C. § 271(c). Defendant's Accused Products have no substantial non-infringing uses and are known

by Defendant to be especially made or especially adapted for use in an infringement of the '422 Patent. Since learning of the '422 Patent, Defendant has contributed to the direct infringement of others by offering to sell, selling or providing the Accused Products to its customers, intending for its customers to resell the Accused Products after each is combined with the customers' own products.

55.     Defendant has been aware of the '422 Patent since at least November 3, 2025. Defendant's infringement of the '422 Patent has been willful and deliberate. Ring is therefore entitled to increased damages under 35 U.S.C. § 284 and attorneys' fees and costs under 35 U.S.C. § 285.

56.     Ring has been and will continue to be damaged by Defendant's infringement of the '422 Patent, and Ring is entitled to recover damages adequate to compensate it for Defendant's infringing activities in an amount to be determined at trial, but in no event less than a reasonable royalty.

57.     Unless enjoined by this Court, Defendant's acts of infringement will continue to damage and cause irreparable harm to Ring.

### COUNT IV - INFRINGEMENT OF U.S. PATENT NO. 12,472,674

58.     Ring realleges, adopts, and incorporates by reference herein each of the foregoing allegations as if fully set forth herein.

59.     Defendant has infringed, and continues to infringe, one or more claims of the '674 Patent, including, but not limited to, exemplary Claim 20, pursuant to 35 U.S.C. § 271(a), at least by, without authority, making, using, selling, offering for sale, and/or importing the Accused Products in the United States, including in this District.

60.     Defendant's Accused Products meet each and every element of at least one claim of the '674 Patent, either literally or through the doctrine of equivalents.

61.     Attached hereto as **Exhibit J**, and incorporated herein by reference, is a representative claim chart detailing how the Accused Products infringe the '674 Patent.

62.     Defendant has also indirectly infringed, and continues to indirectly infringe, one or more claims of the '674 Patent within the United States by inducement under 35 U.S.C. § 271(b). Since learning of the '674 Patent and by failing to cease offering the Accused Products, Defendant has knowingly and intentionally induced, and continues knowingly and intentionally to induce, others in this District and throughout the United States to directly infringe one or more claims of the '674 Patent. Defendant has known or should have known that offering to sell, selling or providing the Accused Products to its customers, intending for its customers to use or resell the Accused Products, would result and has resulted in infringement of one or more claims of the '674 Patent.

63.     Defendant has also indirectly infringed, and continues to indirectly infringe, one or more claims of the '674 Patent by contributing to the direct infringement of others under 35 U.S.C. § 271(c). Defendant's Accused Products have no substantial non-infringing uses and are known by Defendant to be especially made or especially adapted for use in an infringement of the '674 Patent. Since learning of the '674 Patent, Defendant has contributed to the direct infringement of others by offering to sell, selling or providing the Accused Products to its customers, intending for its customers to resell the Accused Products after each is combined with the customers' own products.

64.     Defendant has been aware of the '674 Patent since at least November 3, 2025. Defendant's infringement of the '674 Patent has been willful and deliberate. Ring is therefore

entitled to increased damages under 35 U.S.C. § 284 and attorneys' fees and costs under 35 U.S.C. § 285.

65.     Ring has been and will continue to be damaged by Defendant's infringement of the '674 Patent, and Ring is entitled to recover damages adequate to compensate it for Defendant's infringing activities in an amount to be determined at trial, but in no event less than a reasonable royalty.

66.     Unless enjoined by this Court, Defendant's acts of infringement will continue to damage and cause irreparable harm to Ring.

## PRAYER FOR RELIEF

WHEREFORE, Ring respectfully requests that the Court enter judgment in its favor against Defendant, granting the following relief:

a. A judgment that Defendant has infringed and is infringing the Patents-in-Suit, whether literally or under the doctrine of equivalents;

b. An injunction against Defendant and its affiliates, subsidiaries, assignees, employees, agents, or anyone acting in privity or concert with them from infringing the Patents-in-Suit, including enjoining the making, offering to sell, selling, using, or importing into the United States products claimed in any of the claims of the Patents-in-Suit, until the expiration of the Patents-in-Suit;

c. A judgment and order requiring Defendant to pay Ring's damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of the Patents-in-Suit as provided under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict or post-judgment infringement with an accounting as needed;

d.  A judgment that Defendant's infringement of the Patents-in-Suit was willful and that Defendant's continued infringement of the Patents-in-Suit is willful, and an award of treble damages, as authorized by 35 U.S.C. § 284;

e.  A judgment that this is an exceptional case and an award to Ring of its costs, expenses, disbursements, and reasonable attorneys' fees related to Defendant's patent infringement under 35 U.S.C. § 285 and all other applicable statutes, rules, and common law;

f.  An award of costs and expenses as allowed by law; and

g.  Such other further relief, in law or equity, as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Ring demands a jury trial on all issues and claims so triable.

OF COUNSEL:

Mitchell G. Stockwell
Michael T. Morlock
Karina Glushchak
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, NE, Suite 2800
Atlanta, Georgia 30309
(404) 815-6500
mstockwell@ktslaw.com
mmorlock@ktslaw.com
kglushchak@ktslaw.com

*/s/ Christine D. Haynes*
Frederick L. Cottrell, III (#2555)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff Ring Container Technologies, LLC*

Dated:  February 2, 2026